16-1362-bk
Collins v. J&N Restaurant Assocs., Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of January, two thousand seventeen.

PRESENT:  REENA RAGGI,
          DENNY CHIN,
          RAYMOND J. LOHIER, JR.,
               *Circuit Judges*.

-----------------------------------------------------------------------
JAMES C. COLLINS, in his official capacity as Trustee of the Bankruptcy Estate of John J. Mendolia and Nicolina M. Mendolia,

               *Plaintiff-Appellant*,


               v.                                    No. 16-1362-bk


J&N RESTAURANT ASSOCIATES, INC., ENDVEST, INC., UPFRONT, INC., and WILLOW RUN FOODS, INC.,

               *Defendants-Appellees*.*
-----------------------------------------------------------------------
FOR APPELLANT:                    Edward Y. Crossmore, The Crossmore Law
                                  Office, Ithaca, New York.


FOR APPELLEES:                    Louis Levine, Melvin & Melvin, PLLC,
                                  Syracuse, New York.

---

* The Clerk of Court is directed to amend the case caption as set forth above.

1

Appeal from a judgment of the United States District Court for the Northern District of New York (Brenda K. Sannes, *Judge*; Diane Davis, *Bankruptcy Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 28, 2016 is AFFIRMED.

Plaintiff James C. Collins, in his capacity as trustee of the Mendolia bankruptcy estate (the "Mendolia Trustee"), appeals from a judgment of the district court, affirming a judgment of the United States Bankruptcy Court for the Northern District of New York dismissing the Mendolia Trustee's fraudulent-transfer claim, deeming it discharged by defendants' Chapter 11 reorganization, *see* 11 U.S.C. § 1141(d)(1)(A). On appeal, the district court agreed, and further concluded that the claim was barred by the Chapter 11 plan's disposition of all administrative-expense claims. We review the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error, but may affirm on any ground supported by the record. *See In re Lehman Bros. Holdings Inc.*, 761 F.3d 303, 308 (2d Cir. 2014). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to affirm on the latter ground articulated by the district court.[1]

At the outset we note that before the bankruptcy and district courts, all parties agreed that the alleged fraudulent transfer—proceeds from the sale of the Mendolias' second home used to pay an indebtedness to one of defendants' suppliers shortly before the two bankruptcies here at issue—should be viewed as a post-petition administrative

---

[1] Neither the bankruptcy court nor the district court reached defendants' further *res judicata* defense, and because we would affirm in any event, we also need not reach it.

2

expense of defendants' estate.[2]  Further, the Mendolia Trustee here asserts no lack of notice or opportunity to respond to the defendants' reorganization plan.  *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014).  To the contrary, he concedes that (1) he reviewed the plan; (2) the plan stated that all administrative claims would be paid on its effective date; (3) his claim was not "specifically provided for" in the plan, Appellant's Reply Br. 8; and (4) he nonetheless did not raise his administrative-expense claim until nearly one year after plan confirmation.[3]  The Mendolia Trustee nevertheless contends that he is not precluded from seeking such recovery now because (1) he is not included in the list of parties "bound" under a discharge provision in Chapter 11, *see* 11 U.S.C. § 1141(a); and (2) defendants' Chapter 11 plan did not explicitly say that administrative expenses must be submitted by a date certain.

We need not scrutinize the first argument because the Mendolia Trustee here pursues no claim discharged by 11 U.S.C. § 1141, but rather, as the parties agree, an "administrative expense," recovery for which is handled by other Bankruptcy Code provisions.[4]  *See In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 428–29, 431 (2d Cir. 2009)

---

[2] We express no view on the propriety of this characterization.  *See In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) (defining administrative expense as "'actual, necessary costs and expenses of preserving the estate'" (quoting 11 U.S.C. § 503(b)(1)(A)).  On this appeal, any challenge to the characterization is waived.  *See Vera v. Republic of Cuba*, 802 F.3d 242, 246 (2d Cir. 2015).

[3] In May 2012, the Mendolia Trustee cited the transfer in a motion to convert defendants' Chapter 11 reorganization to a Chapter 7 liquidation, which motion the bankruptcy court denied, and from which the Mendolia Trustee does not appeal.

[4] We therefore express no view on the Mendolia Trustee's argument that the discharge provision of 11 U.S.C. § 1141(d)(1)(A) must be limited to parties identified in § 1141(a).

3

(explaining support for view that administrative expenses that "arise post-petition" are "entitled to distinct treatment separate and apart from pre-petition, or deemed pre-petition, creditor claims"). Specifically, "the filing of requests for payment of administrative expenses and the allowance thereof are governed by section 503 [of the Code]." *Id.* at 429.

While § 503 sets no clear timeline for the submission of administrative-expense requests, *see* 4 Collier on Bankruptcy ¶ 503.03 (16th ed. 2012), it does state that *untimely* submissions are authorized only if "permitted by the court for cause," 11 U.S.C. § 503(a). This effectively recognizes the bankruptcy court's authority to "establish a bar date by which time all administrative expenses must be asserted against the debtor or face discharge." *In re Eagle Picher Indus. Inc.*, 447 F.3d 461, 464–65 (6th Cir. 2006); *see Sanchez v. Nw. Airlines, Inc.*, 659 F.3d 671, 677 (8th Cir. 2011) (noting that creation of "bar date for the majority of administrative expenses" may "force creditors to comply with this bar date or face a discharge"). Conversely, a reorganization plan may provide that unaccounted-for administrative expenses will *not* be discharged at the bar date, but assumed as liabilities of the reorganized debtor. *See In re Eagle-Picher Indus., Inc.*, 447 F.3d at 464–65; *accord In re Duplan Corp.*, 212 F.3d 144, 150, 155 (2d Cir. 2000). The Mendolia Trustee contends that defendants' plan is of the latter variety.

We are not persuaded. Defendants' plan here expressly "discharge[d], and release[d] . . . all Claims of *any nature whatsoever . . .* and *. . . all rights and interests of all Creditors against the Debtor or any of its assets or property*." App'x 49 (emphases added). It defined the term "[c]laim" to refer to any "right to payment," App'x 39, and

4

"Creditor" to include not only holders of pre-petition claims (the definition in the Code, *see* § 101(10)), but also holders of any "[a]dministrative [e]xpense[s]," *i.e.*, "[c]laim[s] which accrued on or after the Petition Date," *id.* at 38, 40. Such "claims" could be paid only to the extent "allowed or fixed by a Final Order of the Court," *id.* at 39, *i.e.*, an order that was "final" and "concerning which the time to appeal or seek a review or other hearing shall have expired," *id.* at 40. The plan thereafter states that it is the "final, complete and exclusive statement of the obligations and duties of the Debtors to the Creditors," *including* the "enforceability of the Claims and Administrative Expense Claims." *Id.* at 49.

Accordingly, while Chapter 11 plans may permit later recovery of unaccounted-for administrative expenses, the quoted language makes plain that defendants' plan did not. We thus need not address whether the applicable "bar date" for submitting such expenses was a date prior to plan confirmation, the plan confirmation date of March 11, 2013, or the May 1, 2013 closure of the bankruptcy case because the Mendolia Trustee did not, until February 14, 2014, commence the dismissed adversary proceeding, which was untimely in any event. To the extent that proceeding may have been interpreted as a request *untimely* to seek administrative expenses, *see, e.g.*, Fed. R. Bankr. P. 9006(b)(1) (authorizing court to permit extension of certain deadlines for "excusable neglect"), we construe the bankruptcy court as denying it. *See* App'x 19 (stating that plaintiff had "sufficient notice"). We identify no abuse of discretion in it so doing. *See In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005) ("Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion.").

5

The cases authorizing administrative-expense recovery of fraudulent-transfer claims cited by the Mendolia Trustee do not bind us, *see In re Nuttall Equip. Co., Inc.*, 188 B.R. 732 (Bankr. W.D.N.Y. 1995); *In re WorldCom, Inc.*, 401 B.R. 637 (Bankr. S.D.N.Y. 2009), and are inapposite in any event. In *Nuttall*, the plaintiff trustee had no timely notice of the confirmation hearing or administrative-expense bar, *see In re Nuttall Equip. Co.*, 188 B.R. at 735, 738–39, and therefore could not be bound as a matter of due process in any event, *see DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d at 150; *see also Sanchez v. Nw. Airlines, Inc.*, 659 F.3d at 675 (due-process limitations applicable to both pre-petition and pre-confirmation claims). Further, in *WorldCom*, fraudulent-transfer liability arose only *after* confirmation of WorldCom's Chapter 11 plan, which further provided no bar date for submitting administrative-expense claims. *See In re WorldCom, Inc.*, 401 B.R. at 647 n.13.

We have considered all of the Mendolia Trustee's other arguments and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6